IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALONZO AUSTIN, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:07-cv-00138-MHT-WC |
| | ) |
| MODERN WOODMAN OF | ) |
| AMERICA, et al., | ) |
| | ) |
| Defendant. | ) |

BRIEF IN SUPPORT OF MOTION TO DISMISS OF
MACON COUNTY PROBATE JUDGE ALFONZA MENEFEE

A.   Introduction

This action was commenced on February 14, 2007 by the filing of a complaint in the United States District Court for the Middle District of Alabama by plaintiff Alonzo Austin. Austin alleges claims arising under 42 U.S.C. § 1983 and state law claims in his complaint. Although the allegations of the complaint are somewhat difficult to understand, it appears that insofar as the matters at issue which involve Judge Menefee are concerned, all allegedly occurred in 1993 and 1994 and involved matters in which Judge Menefee was acting in his judicial capacity as Probate Judge of Macon County, Alabama.

As best it can be ascertained, the complaint alleges the following with regard to Judge Menefee: (1) On March 3, 1993, Judge Menefee refused to "certify" a

"durable general power of attorney" apparently allegedly executed in favor of plaintiff Austin; (2) Judge Menefee commenced guardianship and conservator proceedings on March 18, 1993 with regard to Ruth H. Lewis; (3) On July 6, 1993, Judge Menefee allegedly issued an order voiding plaintiff's durable general power of attorney; (4) On August 5, 1993, plaintiff Austin was served with an order issued by Judge Menefee to appear in Probate Court on August 6, 1993 and to there produce certain items relating to property owned by Ruth H. Lewis; (5) On September 9, 1993, a "judgment/order of contempt" was issued by Judge Menefee ordering plaintiff Austin's arrest for failing to pay a $20 fine imposed by Judge Menefee on account of plaintiff's failure to produce the materials in the Probate Court ordered on August 5, 1993; (6) plaintiff Austin was jailed for contempt of court for a period of 24 hours by Judge Menefee under the authority of § 12-13-9, <u>Code of Alabama</u> (1975) and (7) on February 24, 1994, Judge Menefee transferred the guardianship and conservatorship proceeding involving Ruth H. Lewis to the Circuit Court for Macon County, Alabama.

Judge Menefee has filed a motion to dismiss directed to the plaintiff's claims in this action. The motion to dismiss contends: (1) that he has absolute judicial immunity from the plaintiff's claims; (2) alternatively, he is entitled to qualified immunity from the plaintiff's claims; and (3) the complaint affirmatively shows on

its face that the plaintiff's claims are barred by the expiration of the statutes of limitation applicable to the plaintiff's state and federal claims. This brief is submitted in support of the motion to dismiss of Judge Menefee.

> B. Judge Menefee is Entitled to Absolute Judicial Immunity From the Claims Alleged in the Complaint.

It is obvious from the above-referenced recitation of the facts alleged in plaintiff Austin's complaint that all matters at issue relating to Judge Alfonza Menefee involved alleged conduct undertaken by Judge Menefee in his judicial capacity as Probate Judge of Macon County, Alabama. Because such is the case, Judge Menefee is entitled to absolute judicial immunity from plaintiff's federal and state law claims in this action.

The United States Supreme Court observed many years ago that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871). The leading modern case on judicial immunity is Stump v. Sparkman, 435 U.S. 349 (1978). In that case, a state court judge who entered an order to sterilize a 15-year-old without her knowledge was held by the Supreme Court to be protected by absolute judicial

immunity, even though the "case" ordering the sterilization was not assigned a docket number, was not on file in the clerk's office, and was "approved in an ex parte proceeding without notice to the minor, without a hearing, and without the appointment of a guardian ad litem." 435 U.S. at 360. In Stump, the Supreme Court established a two-part test to determine whether an act was sufficiently "judicial" to warrant immunity from lawsuits for money damages. First, did the judge deal with the plaintiff in his judicial capacity? Id. at 362. Second, if the judge did act in his "judicial capacity," then the focus is on whether the judge acted in the "clear absence of all jurisdiction." Id. at 357 (quoting Bradley, 89 U.S. at 351); accord: Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000). If both of these conditions are satisfied, "immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Bolin, at id., citing Stump, 435 U.S. at 356.

The Eleventh Circuit has interpreted the second prong of the Stump test, i.e., whether the judge acted in the "clear absence of all jurisdiction," as requiring "a complete absence of subject matter jurisdiction." See Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir. 1985) (collecting cases). It is clear that, in allegedly entering the various orders at issue in this case, Judge Menefee acted in his judicial capacity with regard to all of the matter complained of, and had jurisdiction as Judge of Probate over such matters. It is without question that a judge of probate in Alabama

has subject matter jurisdiction to enter orders involving guardianships and conservatorships. See Art. VI § 144, <u>Alabama Constitution of 1901</u> ("There shall be a probate court in each county which shall have . . . power to grant letters . . . of guardianship, and shall have such further jurisdiction as may be provided by law . . ."); § 12-13-1(b)(7), <u>Code of Alabama</u> (1975) ("The probate court shall have original and general jurisdiction over . . . all controversies as to the right of guardianship and the settlement of guardian's accounts."); and §§ 26-2A-31(a) and (c), <u>Code of Alabama</u> (1975) ("The [probate court] has jurisdiction over all subject matter relating to estates of protected persons and protection of minors and incapacitated persons" and "has jurisdiction over protective proceedings and guardianship proceedings.")

It is further clear that judges of probate in Alabama are to be regarded as judicial officers who are entitled to assert the defense of judicial immunity. As early as 1884, in an action on the bond of a probate judge, the Alabama Supreme Court recognized the applicability of the doctrine of judicial immunity to probate judges as follows:

> It is an unquestioned rule, founded on the public benefit, the necessity of maintaining the independence of the judiciary, and its untrammeled action in the administration of justice, that a judge cannot be held to answer in a civil suit for doing, or omitting or refusing to do, an official act in the exercise of judicial power.

5

Grider v. Tally, 77 Ala. 422, 424 (1884).

This Circuit has specifically recognized the applicability of absolute judicial immunity to Alabama probate judges for actions taken in connection with proceedings in which they act in their judicial capacity. See Perkins v. United States Fidelity & Guaranty Co., 433 F.2d 1303 (5th Cir. 1970). Perkins involved a claim by a plaintiff that the Talladega County probate judge had committed him to a state mental institution without a hearing or notice. The plaintiff in Perkins sued the bonding company which provided the surety bond for the probate judge. In defense of the claim arising from the judge's actions, the bonding company in Perkins asserted the defense of absolute judicial immunity. The bonding company argued that because the probate judge would be entitled to absolute judicial immunity even though the statutory requirements for civil commitment were not complied with, the bonding company could have no liability because its liability was derivative of that of the judge. The district court agreed and dismissed the plaintiff's claims on the basis that the judge insured by the bonding company was entitled to absolute judicial immunity. Id. at 1303-04. The former Fifth Circuit affirmed the dismissal based upon judicial immunity. Id. at 1305.

Plaintiff Austin's allegations of a conspiracy in Count IV of the complaint among Judge Menefee and the remaining defendants does not in any way operate to

deprive Judge Menefee of the defense of absolute judicial immunity. The case law is uniform that allegations of a conspiracy between a judge and a third party do not operate to deprive a judge of the defense of absolute judicial immunity. See, e.g., Dykes, 776 F.2d at 946 (If judges could be "hauled into court" on "mere allegations of conspiracy or prior agreement," such would defeat the "precise result judicial immunity was designed to avoid."); Harper v. Merckle, 638 F.2d 848, 856 n. 9 (5th Cir. Unit B), cert. denied 454 U.S. 816 (1981) ("[E]ven a judge who is approached as a judge by a party [and conspires with such party] to violate [another party's federal constitutional rights] is properly immune from a damage suit" brought under section 1983.)

      C.    Alternatively, Judge Menefee is Entitled to Qualified Immunity From the Claims Alleged in the Complaint in This Case.

At a minimum, Judge Menefee is entitled to qualified immunity from plaintiff Austin's § 1983 claims in this action. All of the allegations of conduct on the part of Judge Menfee in the complaint in this case constitute routinely normal and appropriate judicial conduct on the part of an Alabama probate judge presiding over a contested legal matters. None of the matters alleged give rise to a constitutional violation, much less one which can be said to have been violative of clearly established constitutional rights. The Supreme Court's decision in Anderson v.

Creighton, 483 U.S. 635 (1987), explains what is meant by "clearly established" law necessary to defeat the defense of qualified immunity:

> [O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 640 (citations omitted). According to the Supreme Court, the impermissible consequence of applying the "clearly established" law test too generally is that "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging [a] violation of extremely abstract rights." Id. at 639.

In Hope v. Pelzer, 536 U.S. 730, 741 (2002), the Supreme Court stated that the "salient question" for purposes of determining whether a violation of clearly established law has occurred is "whether the state of the law [at the time of the challenged conduct] gave [the government actor] *fair warning* that [his or her] alleged treatment [of the plaintiff] was unconstitutional." (emphasis added). The Supreme Court has cautioned, however, that the inquiry into whether a constitutional right is

8

clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). See also Anderson, 483 U.S. at 639-41 (cautioning against identifying constitutional rights at a general level and instead requiring an objective "fact-specific" inquiry based on information possessed by the government actor). Thus, unless a plaintiff in a § 1983 case can point to a case that fairly warns the government actor of the unconstitutionality of the challenged conduct, qualified immunity should protect the officer from liability under 42 U.S.C. § 1983. See, e.g., Wilson v. Layne, 526 U.S. 603, 604 (1999) (granting qualified immunity where plaintiff could not point to case law existing at the time of the incident which clearly established the rule of law upon which the plaintiff sought to rely); Saucier, 533 U.S. at 201-02, 209 (granting qualified immunity where the plaintiff had not "identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did . . ."). See also Vinyard v. Wilson, 311 F. 3d 1340, 1351-1353 (11th Cir. 2002) (recognizing that, based on the Supreme Court's decision in Hope that unless a constitutional provision directly prohibits the challenged conduct, or a case had previously held the challenged conduct to be unconstitutional under any circumstances, before a government actor may be stripped of qualified immunity, a § 1983 plaintiff must

show that case law with "a very high degree of prior factual particularity" had previously determined the conduct to be unconstitutional).

There is no case law which has held that the alleged actions by Judge Menefee claimed in the complaint in this case, i.e., ruling contrary to the plaintiff in a guardianship proceeding, holding the plaintiff in contempt of court for failing to produce materials in court relating to the guardianship, and transferring the guardianship proceeding to circuit court, constitutes a violation of due process or any other federal constitutional right. Because no such case law exists, the allegations of the complaint in this case are insufficient to overcome Judge Menefee's assertion of the defense of qualified immunity.

> D.  The § 1983 and State Law Claims Alleged Against Judge Menefee Are Barred By the Expiration of the Applicable Statutes of Limitation.

As discussed above, all of the matters alleged in the complaint in this case involving Judge Menefee allegedly occurred in 1993 and 1994. As such, they are are time-barred by the expiration of the two-year statute of limitations applicable to § 1983 claims in federal court in Alabama. See Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483-84 (11th Cir. 1989). See also Lufkin v. McCallum, 956 F.2d 1104, 1105 (11th Cir. 1992).

In addition, the applicable statutes of limitations have also expired with regard to any state law tort claims alleged in the complaint. As best as is understood from the complaint, plaintiff Austin alleges state law claims for intentional infliction of emotional distress (Count V and VI), and abuse of process, false arrest and false imprisonment (Count VII). The statute of limitations for the tort claim of intentional infliction of emotional distress is two years. See Archie v. Enterprise Hosp. and Nursing Home, 508 So. 2d 693, 695 (Ala. 1987) (". . . [W]e hold that the tort of outrage or intentional infliction of emotional distress is governed by the two-year statute of limitations found in § 6-2-38(l) . . ." The statute of limitations for abuse of process is also two years. See § 6-2-38(l) Code of Alabama (1975).[1] The statute of limitations for false arrest or false imprisonment is six years. See § 6-2-34(1), Code of Alabama (1975). Because all of the matters alleged in the complaint in this case involving Judge Menefee occurred, at the very latest, in 1994, any state law claims are long since time-barred by the expiration of the applicable Alabama statutes of limitation.

---

[1]There is no specific statute of limitations covering abuse of process claims. As a consequence, abuse of process is subject to the "catch-all" statute of limitations contained in § 6-2-38(l). See McLeod, Civil Actions at Law in Alabama, 3d ed. at p. 635.

11

                                                s/ George W. Royer, Jr.
                                                George W. Royer, Jr.

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
Huntsville, AL  35804
Telephone:  256-535-1100

Attorneys for Defendant Alfonza Menefee

CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing upon the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joe Espy, III
Melton, Espy & Williams, P.C.
P. O. Drawer 5130
Montgomery, Alabama 36103

I hereby certify that I have served a copy of the foregoing by depositing a copy of the same in the United States mail, postage prepaid and properly addressed to his attorney of record to:

| | |
|---|---|
| Alonzo Austin<br>1321 Oliver-Carlis Rd.<br>Tuskegee, Alabama 36083 | City of Tuskegee Police Department<br>101 Fonville Street<br>Tuskegee, Alabama 36083 |
| Modern Woodman of America<br>1701 1st Avenue<br>Rock Island, IL 16120 | Montgomery City Police Department<br>320 N. Ripley Street<br>P. O. Box 159<br>Montgomery, Alabama 36101-0159 |
| Howard F. Bryan<br>101 East Northside Street<br>Tuskegee, Alabama 36083 | Robert Story<br>802 Crawford Street<br>Tuskegee, Alabama 36083 |
| Deborah Hill Biggers<br>Tuskegee Institute<br>P. O. Box 1183<br>Tuskegee, Alabama 36087 | Alabama State Treasurer's Office<br>P. O. Box 302520<br>Montgomery, Alabama 36130-2520 |
| Mason Manor<br>4120 Carmichael Road<br>Montgomery, Alabama 36106 | Alabama State Board of Licensure<br>P. O. Box 887<br>Montgomery, Alabama 36101 |

| | |
|---|---|
| Alabama Exchange Bank President<br>102 West Northside Street<br>Tuskegee, Alabama 36083 | Juanita K. Upshaw<br>P. O. Box 830265<br>Tuskegee, Alabama 36083 |
| Robert Davis<br>102 West Northside Street<br>Tuskegee, Alabama 36083 | George Clay<br>1205 Main Street<br>Tuskegee, Alabama 36083 |
| SouthTrust Bank<br>307 N. Gay Street<br>Auburn, AL 36830-3915 | Aetna Insurance Co.<br>Tampa Business Center<br>P. O. Box 30257<br>Tampa, Florida 33620-3257 |
| Regions Bank<br>8 Commerce Street<br>Montgomery, Alabama 36104 | |

on this the 12th day of March, 2007.

                                                                         s/ George W. Royer, Jr.
                                                                         George W. Royer, Jr.